**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

**JORGE CALDERON; JULIAN
MARTINEZ;**

Residents of Prince George's County

      c/o Murphy Anderson PLLC
      1401 K Street NW, Suite 300
      Washington, DC 20005

**EMILY PEREZ; TOMAS PEREZ;
SAMUEL NUNEZ,**

      c/o Murphy Anderson PLLC
      1401 K Street NW, Suite 300
      Washington, DC 20005

**on behalf of themselves and others
similarly situated,**

              **Plaintiffs,**

**v.**

**ELITE WALL SYSTEMS LLC**;

      12077 Tech Road
      Silver Spring, MD 20904

**GILBANE BUILDING COMPANY**;

      7 Jackson Walkway, Suite 1
      Providence, RI 02903

**WHITING-TURNER CONTRACTING
COMPANY**;

      300 E. Joppa Road
      Baltimore, MD 21286

**Case No.**

**Class Action Complaint**

**HITT CONTRACTING, INC.**;

2900 Fairview Park Drive
Falls Church, VA, 22042

**SUFFOLK CONSTRUCTION
COMPANY, INC**,

65 Allerton Street
Boston, MA 02119

**Defendants**.

## COMPLAINT

1.      Plaintiffs are construction workers who performed work on construction projects in Maryland and the District of Columbia ("D.C.") as employees of the subcontractor Elite Wall Systems LLC ("Elite").

2.      Plaintiffs bring their claims on behalf of themselves and a class of all other similarly-situated workers whom Elite subjected to multiple forms of unlawful wage theft.

3.      Defendant Elite has acted as a subcontractor on numerous construction projects throughout the mid-Atlantic. Elite engaged in a scheme to steal wages from Plaintiffs and other similarly-situated employees by: (a) misclassifying them as independent contractors; (b) failing to pay required overtime wages; and (c) failing, on certain projects, to pay workers applicable prevailing wages for straight time and overtime work. These illegal practices enabled Elite to gain significant market share by undercutting law-abiding businesses.

4.      As the general contractors on projects for which Elite was a subcontractor, Defendants Gilbane Building Company ("Gilbane"), Whiting-Turner Contracting Company ("Whiting-Turner"), HITT Contracting, Inc. ("HITT"), and Suffolk Construction Company, Inc. ("Suffolk") (collectively, the "General Contractor Defendants") are liable under Maryland and/or

D.C. law for Defendant Elite's failure to pay its employees the required wages. The General Contractor Defendants similarly benefited from the wage theft scheme by paying Elite less than the market rate and consequently gaining market share by being able to undercut law-abiding general contractors, and/or by making more profits by engaging a low-road subcontractor.

5.     Defendants' scheme of misclassifying workers and failing to pay them the required wages involved some of the most high-profile construction projects in the DMV for well over a decade. Some of the projects included university buildings, public schools, downtown DC hotels, and the MGM National Harbor Casino. Hundreds, if not thousands, of workers were cheated out of a fair wage directly and as a result of Defendants' manipulation of the labor market. Construction contractors that played by the rules lost contracts because of Defendants' unlawful pay practices.

6.     Defendants' misclassification of its employees as independent contractors interfered with Plaintiffs' and similarly-situated employees' ability to be protected by unemployment, workers compensation, and anti-discrimination laws.

7.     Defendants misrepresented to the governments of Maryland and D.C. that their employees working on public works projects were paid correctly. Taxpayers were cheated out of tax revenue by the naked misclassification of Defendant Elite's employees.

8.     Plaintiffs, on behalf of themselves and the similarly-situated employees they seek to represent pursuant to Federal Rule of Civil Procedure 23, seek unpaid wages and overtime compensation, damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Maryland Workplace Fraud Act, Md. Code, Lab. & Emp. § 3-901, *et seq.* ("MWFA"); the Maryland Wage and Hour Law, *id.* § 3-401 *et seq.* ("MWHL"); the Maryland Wage Payment and Collection Law, *id.* § 3-501 *et seq.* ("MWPCL"); the Maryland Prevailing Wage Statute,

Md. Code, State Fin. & Proc. § 17-201 *et seq.* ("MPWS"); the D.C. Workplace Fraud Act, D.C. Code § 32-1331.01 *et seq.* ("DCWFA"); the D.C. Minimum Wage Revision Act, D.C. Code § 32-1001 *et seq.* ("DCMWRA"); and the D.C. Wage Payment and Collection Law, D.C. Code § 32-1301 *et seq.* ("DCWPCL").

9.      Plaintiffs, on behalf of themselves only, also seek unpaid wages and overtime compensation, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds the sum of $5,000,000 in damages and at least one class member is a citizen of a state different from at least one defendant; indeed fewer than two-thirds of class members are citizens of Maryland, where Elite is headquartered. This Court further has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs' FLSA claims.

11.      This Court has supplemental jurisdiction over Plaintiffs' claims arising under the Maryland and D.C. wage laws pursuant to 28 U.S.C. § 1367(a) and Art. III, Section 2 of the United States Constitution because Plaintiffs' state law claims are so related to the claims in this action over which the Court has original jurisdiction that they form part of the same case or controversy.

12.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

13.      Plaintiff Jorge Calderon is a resident of Maryland and was an hourly non-exempt employee for Defendant Elite from approximately May 2020 to September 2022 and February

2023 to October 2023 and performed work on projects in Maryland and D.C. where Defendants Gilbane and Whiting Turner were general contractors.

14.    Plaintiff Emily Perez is a resident of Virginia and was an hourly non-exempt employee for Defendant Elite from approximately July 2021 to December 2023 and performed construction work on projects in Maryland and D.C. where Defendants Gilbane, Whiting-Turner, and HITT were general contractors, respectively.

15.    Plaintiff Tomas Perez is a resident of Virginia and was an hourly non-exempt employee for Defendant Elite from approximately June 2022 to October 2023 and performed construction work on a project where Defendant HITT was the general contractor.

16.    Plaintiff Samuel Nunez is a resident of Virginia and was an hourly non-exempt employee for Defendant Elite from approximately August 2020 to August 2023 and performed construction work on projects in Maryland and D.C. where Defendants Gilbane, Whiting-Turner, and HITT were general contractors, respectively.

17.    Plaintiff Julian Martinez is a resident of Maryland and has been an hourly non-exempt employee for Defendant Elite from approximately January 2020 to present, and performed construction work on projects in Maryland and D.C. where Defendants Gilbane, Whiting-Turner, HITT, and Suffolk were general contractors, respectively.

18.    Each Plaintiff has given their written consent to be a party to this action. *See* 29 U.S.C. § 216(b). True and correct copies of Plaintiffs' consent forms are filed as Exhibit C to the Declaration of Ricardo Perez, filed concurrently with this Complaint.

19.    Defendant Elite Wall Systems LLC is a Maryland limited liability company with its principal place of business at 12077 Tech Road, Silver Spring, MD 20904.

20.    Defendant Elite operates as a subcontractor on both public and private projects performing wall construction services.

21.    Defendant Gilbane Building Company is a Rhode Island corporation with its principal place of business at 7 Jackson Walkway, Ste. 1, Providence, RI 02903.

22.    Upon information and belief, Defendant Gilbane was the general contractor on at least two projects in which subcontractor Elite failed to pay its employees the required wages: the CitizenM Washington D.C. NoMa Hotel in Washington, D.C. and the University of Maryland Eastern Shore School of Pharmacy and Health Professions in Princess Anne, MD.

23.    Defendant Whiting-Turner Contracting Company is a Maryland corporation with its principal place of business at 300 E. Joppa Rd., Baltimore, MD 21286.

24.    Upon information and belief, Defendant Whiting-Turner was the general contractor on at least two projects in which subcontractor Elite failed to pay its employees the required wages: a Research and Development Office located at 9810 Darnestown Road, Rockville, MD and the Ritch Homes Apartments in Washington, DC.

25.    Defendant HITT Contracting, Inc. is a Virginia corporation with its principal place of business at 2900 Fairview Park Dr, Falls Church, VA, 22042.

26.    Upon information and belief, Defendant HITT was the general contractor on at least two projects in which subcontractor Elite failed to pay its employees the required wages: MGM National Harbor in Oxon Hill, MD and a Luxury Condominium development located at 1455 Pennsylvania Avenue NW, Washington, DC 20004.

27.    Defendant Suffolk Construction Company, Inc. is a Massachusetts corporation with its principal place of business at 65 Allerton St., Boston, MA 02119.

28.     Upon information and belief, Defendant Suffolk was the general contractor on at least one project in which subcontractor Elite failed to pay its employees the required wages: the Children's National Research & Innovation Campus in Washington, DC.

29.     Upon information and belief, Defendant Gilbane was the signatory to prevailing wage contracts worth more than $250,000 with the University of Maryland School of Pharmacy and Health Professions to perform drywall construction services in Maryland. Defendant Elite performed work on these contracts by way of subcontracts worth more than $250,000 with Gilbane.

30.     Upon information and belief, Defendant Whiting-Turner was the signatory to prevailing wage contracts worth more than $2,000 through the DC Housing Finance Agency to perform drywall construction services at Ritch Homes Apartments in DC. Defendant Elite performed work on these contracts by way of subcontracts worth more than $2,000 with Whiting-Turner.

## FACTUAL BACKGROUND

31.     Defendant Elite is a commercial drywall construction company and was a subcontractor on numerous construction projects in Maryland and D.C. (the "Projects").

32.     Defendant Elite employed Plaintiffs and similarly-situated employees as laborers, finishers, carpenters, and mechanics on the Projects.

33.     Elite controlled all aspects of Plaintiffs' work, including setting the number of hours worked on the Projects, setting Plaintiffs' daily work tasks, inspecting Plaintiffs' work, and supervising the jobsites.

34.     Plaintiffs and similarly-situated employees performed work for Elite that was within the usual course of Elite's business: commercial drywall construction.

35.     At all times material to this lawsuit, Elite classified Plaintiffs and similarly-situated employees as independent contractors, despite the fact that Elite controlled all aspects of the work they performed, including setting schedules, assigning tasks, and setting required policies, and despite the fact that Plaintiffs performed work within Elite's usual course of business.

36.     Elite did not classify Plaintiffs and similarly-situated employees as exempt employees.

37.     Plaintiffs did not perform any work that was of a *bona fide* executive, administrative, or professional nature, or that would otherwise exempt them from the FLSA, D.C. Wage Laws, or Maryland Wage Laws.

<u>Overtime Allegations</u>

38.     Elite failed to pay Plaintiffs time and one-half for all hours worked in excess of 40 hours per week as required by the FLSA.

39.     Elite processed paystubs for Plaintiffs and similarly-situated employees that detailed the number of hours the employees worked and that employees were paid only straight-time for hours in excess of 40 hours per week. For instance, Plaintiff Calderon worked 58 hours on the week of June 12 to June 18, 2023, and was paid $1,044. His pay rate was $18 per hour and consequently he was paid straight time for all his work. This naked payroll fraud was the standard practice for all Plaintiffs and similarly-situated employees. Elite did not even attempt to hide that it was violating overtime laws.

40.     As another example, during the week of June 19 to June 25, 2023, Elite employed Plaintiff Jorge Calderon as a carpenter on a construction project at a Research and Development Office located at 9810 Darnestown Road, Rockville, MD. Mr. Calderon worked 50 hours that

week and Elite paid Mr. Calderon his hourly straight time rate of $18 per hour for all hours worked, though Elite was legally required to pay him time and one-half (an overtime rate of $27 per hour) for the 10 hours he worked in excess of 40. Upon information and belief, Defendant Whiting-Turner was the general contractor on this project.

41.    Plaintiff Jorge Calderon also regularly worked in excess of 40 hours in a workweek while Elite employed him as a carpenter on the University of Maryland Eastern Shore School of Pharmacy and Health Professions project. Elite paid Mr. Calderon his hourly straight time rate of $17 per hour for all hours worked, though Elite was legally required to pay him time and one-half (an overtime rate of $25.50 per hour) for the hours he worked in excess of 40 in a given week. Upon information and belief, Defendant Gilbane was the general contractor on this project.

42.    Elite also employed Plaintiff Jorge Calderon as a carpenter on a construction project at the CitizenM Washington D.C. NoMa Hotel in Washington, D.C. for approximately eight months beginning in late 2021. Mr. Calderon regularly worked more than 40 hours in a workweek on this project and Elite paid Mr. Calderon his hourly straight time rate for all hours worked, though Elite was legally required to pay him time and one-half for the hours he worked in excess of 40 in a given week. Upon information and belief, Defendant Gilbane was the general contractor on this project.

43.    Elite employed Plaintiff Emily Perez as a laborer on a construction project at the MGM National Harbor Casino in Oxon Hill, MD from approximately July 2021 to September 2021. On that project, Elite required Ms. Perez to work as long as 16 hours in a shift, and to work between 5 and 7 days per week. During the week of August 23 to August 29, 2021, for example, Ms. Perez worked 61 hours. Elite paid Ms. Perez her hourly straight time rate of $15 per hour for

all hours worked that week, though Elite was legally required to pay her time and one-half (an overtime rate of $22.50 per hour) for the 21 hours she worked in excess of 40. Upon information and belief, Defendant HITT was the general contractor on this project.

44.    Plaintiff Emily Perez also regularly worked in excess of 40 hours in a workweek while Elite employed her as a finisher on the CitizenM Washington D.C. NoMa Hotel in Washington, D.C. from approximately October 2021 to December 2021, and approximately March 2022 to May 2022. Elite paid Ms. Perez her hourly straight time rate for all hours worked, though Elite was required to pay her time and one-half for the hours she worked in excess of 40 hours in a given week. Upon information and belief, Defendant Gilbane was the general contractor on this project.

45.    As another example, Elite employed Plaintiff Samuel Nunez as a carpenter on a construction project at the MGM National Harbor Casino in Oxon Hill, MD during the week of October 17 to October 23, 2022. Mr. Nunez worked 68 hours that week and Elite paid Mr. Nunez his hourly straight time rate of $20 per hour for all hours worked, though Elite was legally required to pay him time and one-half (an overtime rate of $30 per hour) for the 28 hours he worked in excess of 40. Upon information and belief, Defendant HITT was the general contractor on this project.

46.    Plaintiff Samuel Nunez also regularly worked over 40 hours in a workweek while Elite employed him as a carpenter on the CitizenM Washington D.C. NoMa Hotel in Washington, D.C. for approximately four months in 2022. Elite paid Mr. Nunez his hourly straight time rate for all hours worked on this project, though Elite was legally required to pay him time and one-half for the hours he worked in excess of 40 in a given week. Upon information and belief, Defendant Gilbane was the general contractor on this project.

47.     Plaintiff Julian Martinez regularly worked over 40 hours in a workweek while Elite employed him as a laborer on the Children's National Research & Innovation Campus project in late 2021. Elite paid Mr. Martinez his hourly straight time rate for all hours worked, though Elite was legally required to pay him time and one-half for the hours he worked in excess of 40 hours in that given week. Upon information and belief, Defendant Suffolk was the general contractor on this project.

48.     Plaintiff Julian Martinez also regularly worked over 40 hours in a workweek while Elite employed him as a laborer on the Ritch Homes Apartments project in late 2021. Elite paid Mr. Martinez his $18 per hour straight time rate for all hours worked, though Elite was legally required to pay him time and one-half for the hours he regularly worked in excess of 40 hours in that given week. The prevailing rate he should have been paid is nearly twice the rate he was actually paid. Upon information and belief, Defendant Whiting-Turner was the general contractor on this project.

49.     Elite also employed Plaintiff Julian Martinez as a carpenter on a construction project at the University of Maryland Eastern Shore School of Pharmacy and Health Professions project during the week of August 22 to August 28, 2022. Mr. Martinez worked 48 hours that week and Elite paid Mr. Martinez his hourly straight time rate of $25 per hour for all hours worked, though Elite was legally required to pay him time and one-half (an overtime rate of $37.50 per hour) for the 8 hours he worked in excess of 40. Upon information and belief, Defendant Gilbane was the general contractor on this project.

50.     Plaintiff Tomas Perez regularly worked 16-hour shifts from 5 to 7 days a week and over 40 hours in a workweek while Elite employed him as a carpenter on the MGM National Harbor Casino project in Oxon Hill, MD from approximately June 2022 through October 2023.

Elite paid Mr. Perez his hourly straight-time rate of $20 per hour for all hours worked, though Elite was legally required to pay him time and one-half (an overtime rate of $30 per hour) for the hours he worked in excess of 40 hours in a given week. Upon information and belief, Defendant HITT was the general contractor on this project.

51.     Plaintiffs and similarly-situated employees regularly worked in excess of 40 hours per week.

52.     Elite routinely paid straight-time rates for all hours worked and did not pay overtime premiums for hours worked in excess of 40 per workweek.

<u>Prevailing Wage Allegations</u>

53.     The University of Maryland is an institution funded by the State of Maryland and contracts issued under its auspices are subject to payment of prevailing wages and benefits. The University of Maryland School of Pharmacy and Health Professions was one such contract.

54.     Elite performed work on this public works project as a subcontractor to Gilbane.

55.     The Ritch Homes Apartments project was subject to payment of prevailing wages and benefits because it was constructed in accordance with a Low-Income Housing Tax Credit contract through the DC Housing Finance Agency.

56.     Elite performed work on this public works project as a subcontractor to Whiting-Turner.

57.     Elite was required to pay "prevailing wages" for the construction on these public works projects. Upon information and belief, Elite and/or Gilbane or Whiting-Turner notified the workers that work on these projects was governed by prevailing wage rates. Notwithstanding, Plaintiffs and similarly situated individuals who worked on these public works projects were not paid the applicable prevailing wage rates and benefits.

58.     The DCWPCL instructs that "[i]n enforcing the provisions of this chapter, the remuneration promised by an employer to an employee shall be presumed to be at least the amount required by federal law, including federal law requiring the payment of prevailing wages, or by District law." D.C. Code § 32-1305.

59.     The MPWL requires contractors or subcontractors under state public work contracts worth at least $250,000 that are not otherwise covered by federal law to pay their employees the appropriate "prevailing wage rate" for their work classification in their particular locality. Md. Code., State Fin. & Proc. §§ 17-201(h), 17-202(b), and 17-208.

60.     Upon information and belief, the contracts between Gilbane and the University of Maryland incorporated the prevailing wage rates applicable to construction workers on the University of Maryland Eastern Shore School of Pharmacy and Health Professions project.

61.     Upon information and belief, the contracts between Whiting-Turner and the DC Housing Finance Agency incorporated the prevailing wage rates applicable to construction workers on the Ritch Homes Apartments project.

62.     Upon information and belief, Elite received subcontracts for construction services on Maryland and D.C. public works projects.

63.     Upon information and belief, the contracts for the University of Maryland School of Pharmacy and Health Professions between Defendants Elite and Gilbane incorporated the prevailing wage rates.

64.     Upon information and belief, the contracts for the Ritch Homes Apartments project between Defendants Elite and Whiting-Turner incorporated the prevailing wage rates.

65.     As a subcontractor, Elite was required to pay its employees the prevailing wage for all time worked on these public works projects.

66.    Plaintiffs Jorge Calderon, Emily Perez and Julian Martinez are intended third-party beneficiaries of the contract between the University of Maryland and Gilbane, and the subcontracts between Gilbane and Elite.

67.    Plaintiff Julian Martinez is an intended third-party beneficiary of the contract between the DC Housing Finance Agency and Whiting-Turner, and the subcontract between Whiting-Turner and Elite.

68.    Elite hired these Plaintiffs to perform drywall construction services on public works projects.

69.    Plaintiffs Jorge Calderon, Emily Perez, Julian Martinez and similarly situated workers worked for Elite on public works projects in Maryland and Elite did not pay them the applicable prevailing wages and fringe benefits for their straight time and overtime work.

70.    During Ms. Perez 's employment, Elite paid her at the rate of $25 per hour when she worked on the University of Maryland Eastern Shore School of Pharmacy and Health Profession public works project. That was less than the applicable prevailing wage.

71.    Plaintiff Julian Martinez and similarly situated workers worked for Elite on public works project in the District of Columbia, including Ritch Homes Apartments, and Elite did not pay them the applicable prevailing wages and fringe benefits for their straight time and overtime work.

72.    During Mr. Martinez's employment, Elite paid him at the rate of $18 per hour when he worked on the Ritch Homes Apartments public works project. That was less than the applicable prevailing wage.

73.    Upon information and belief, Plaintiffs and other similarly situated employees worked in excess of 40 hours per week from time to time.

74.     Elite did not pay Plaintiffs and similarly situated workers the prevailing wage rate for hours worked in excess of 40 hours per week.

<u>Maryland Class Allegations</u>

75.     Plaintiffs Emily Perez, Tomas Perez, Jorge Calderon, Julian Martinez, and Samuel Nunez, as class representatives, bring Counts Two, Three, and Four on behalf of themselves and a class of persons who are or were employed by Defendant Elite on construction projects in Maryland at any time within the period beginning three years prior to the filing of this lawsuit to the date of trial, who were classified as independent contractors and who worked over 40 hours in a workweek, or on contracts funded in whole or in part by the federal government or the State of Maryland ("Maryland Public Works Projects"), (the "Maryland Class"). Plaintiffs reserve the right to name additional class representatives and to revise the class definition or identify sub-classes and sub-class representatives as may be necessary and appropriate.

76.     <u>Ascertainability</u>. The identity of all Maryland Class members is readily ascertainable from Defendants' records, and class notice can be provided to all class members by conventional means such as U.S. mail, email, and workplace postings.

77.     <u>Numerosity</u>. The size of the class makes a class action both necessary and efficient. Upon information and belief, the class consists of at least 85 workers currently or formerly employed by Elite during the applicable limitations period. Members of the class are ascertainable but so numerous that joinder is impracticable. The class includes future class members who will benefit from the injunctive relief sought herein and whose joinder is inherently impossible.

78.　　<u>Common Questions of Law and Fact</u>. This case poses common questions of law and fact, which are likely to generate common answers advancing resolution of the litigation, affecting the rights of all class members, including:

    a.　Whether Defendant Elite had a practice and policy of misclassifying Plaintiffs and class members as independent contractors;

    b.　Whether Defendant Elite required, suffered, or permitted Plaintiffs and class members to work in excess of 40 hours per week;

    c.　Whether Defendant Elite had a policy and practice of failing to pay Plaintiffs and class members the legally required overtime premium for hours worked in excess of 40 hours per week;

    d.　Whether Defendant Elite had a policy and practice of failing to pay Plaintiffs and class members legally required prevailing wages;

    e.　Whether Defendant Elite's failure to pay overtime premiums was willful and not in good faith;

    f.　Whether Defendant Elite's failure to pay prevailing wages was willful and not in good faith;

    g.　Whether Elite subcontracted with the General Contractor Defendants.

79.　　<u>Typicality</u>. The claims of the individual plaintiffs are typical of the claims of the Class as a whole. Defendants' unlawful wage policies and practices, which have operated to deny Plaintiffs overtime premiums and prevailing wages, are typical of the unlawful wage policies and practices that have and will continue to operate to deny other class members lawful compensation.

80.    <u>Adequacy of Class Representation</u>. The individual Plaintiffs can adequately and fairly represent the interests of the class as defined above, because their individual interests are consistent with, not antagonistic to, the interests of the class.

81.    <u>Adequacy of Counsel of the Class</u>. Counsel for Plaintiffs have the requisite resources and ability to prosecute this case as a class action and are experienced labor and employment and class action attorneys who have successfully litigated other cases involving similar wage and hour issues, including on a class action basis.

82.    <u>Propriety of Class Action Mechanism</u>. These claims are properly maintainable as a class action under Federal Rule of Civil Procedure 23 because, in addition to satisfying Rule 23(a) requirements as set forth above, Rule 23(b)(3) is satisfied here because the common questions of law and fact predominate over any questions affecting only individual members of the class. For all these and other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy set forth in this Complaint.

<u>D.C. Class Allegations</u>

83.    Plaintiffs Emily Perez, Jorge Calderon, Samuel Nunez, and Julian Martinez, as class representatives, bring Counts Five, Six, and Seven on behalf of themselves and a class of persons who are or were employed by Defendant Elite on construction projects in the District of Columbia at any time within the period beginning three years prior to the filing of this lawsuit to the date of trial, who were classified as independent contractors and who worked over 40 hours in a workweek, or worked on contracts funded in whole or in part by the federal government or the District of Columbia ("D.C. Public Works Projects"), (the "D.C. Class"). Plaintiffs reserve the right to name additional class representatives and to revise the class definition or identify sub-classes and sub-class representatives as may be necessary and appropriate.

84.    <u>Ascertainability</u>. The identity of all D.C. Class members is readily ascertainable from Defendants' records, and class notice can be provided to all class members by conventional means such as U.S. mail, email, and workplace postings.

85.    <u>Numerosity</u>. The size of the class makes a class action both necessary and efficient. Upon information and belief, the class consists of at least 75 workers currently or formerly employed by Elite during the applicable limitations period. Members of the class are ascertainable but so numerous that joinder is impracticable. The class includes future class members who will benefit from the injunctive relief sought herein and whose joinder is inherently impossible.

86.    <u>Common Questions of Law and Fact</u>. This case poses common questions of law and fact, which are likely to generate common answers advancing resolution of the litigation, affecting the rights of all class members, including:

a.    Whether Defendant Elite had a practice and policy of misclassifying Plaintiffs and class members as independent contractors;

b.    Whether Defendant Elite required, suffered, or permitted Plaintiffs and class members to work in excess of 40 hours per week;

c.    Whether Defendant Elite had a policy and practice of failing to pay Plaintiffs and class members the legally required overtime premium for hours worked in excess of 40 hours per week;

d.    Whether Defendant Elite had a policy and practice of failing to pay Plaintiffs and class members legally required prevailing wages;

e.    Whether Defendant Elite's failure to pay overtime premiums was willful and not in good faith;

f.  Whether Defendant Elite's failure to pay prevailing wages was willful and not in good faith;

g.  Whether Elite subcontracted with the General Contractor Defendants.

87.  <u>Typicality</u>. The claims of the individual plaintiffs are typical of the claims of the Class as a whole. Defendants' unlawful wage policies and practices, which have operated to deny Plaintiffs overtime premiums and prevailing wages, are typical of the unlawful wage policies and practices that have and will continue to operate to deny other class members lawful compensation.

88.  <u>Adequacy of Class Representation</u>. The individual plaintiffs can adequately and fairly represent the interests of the class as defined above, because their individual interests are consistent with, not antagonistic to, the interests of the class.

89.  <u>Adequacy of Counsel of the Class</u>. Counsel for Plaintiffs have the requisite resources and ability to prosecute this case as a class action and are experienced labor and employment and class action attorneys who have successfully litigated other cases involving similar wage and hour issues, including on a class action basis.

90.  <u>Propriety of Class Action Mechanism</u>. These claims are properly maintainable as a class action under Federal Rule of Civil Procedure 23 because, in addition to satisfying the requirements of Rule 23(a) as set forth above, Rule 23(b)(3) is satisfied because the common questions of law and fact predominate over any questions affecting only individual members of the class. For all these and other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy set forth in this Complaint.

**COUNT ONE**
**Violation of the Fair Labor Standards Act**
**(Brought by Individual Plaintiffs against Defendant Elite)**

91.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

92.     At all times relevant to this action, Plaintiffs were employees within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

93.     At all times relevant to this action, Defendant Elite has been an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

94.     The overtime provisions set forth in the FLSA, 29 U.S.C. § 207(a), and the supporting regulations, apply to Defendant Elite and protect Plaintiffs.

95.     Elite failed to pay Plaintiffs overtime compensation for all hours that they worked in excess of 40 hours in a workweek.

96.     As a result of Elite's unlawful acts, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other compensation pursuant to the FLSA, 29 U.S.C. § 216(b).

97.     Elite's unlawful conduct, as described in this Complaint, has been intentional and willful. Elite was aware or should have been aware that the practices described in this Complaint were unlawful. Elite has not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs.

98.     Because Elite's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**COUNT TWO**
**Violation of the MWFA – Misclassification**
**(Brought on behalf of Plaintiffs and the Maryland Class against Defendant Elite)**

99.     Plaintiffs repeat and reallege the foregoing paragraphs of this complaint as if fully set forth herein.

100.     At all relevant times, Defendants were Plaintiffs' "employer" within the meaning of the MWFA, Md. Code, Lab. & Emp., § 3-901.

101.     At all relevant times, Defendants employed Plaintiffs for "construction services" within the meaning of the MWFA, Md. Code, Lab. & Emp., § 3-901.

102.     Section 3-903 of the MWFA prohibits employers from misclassifying employees who perform construction work.

103.     Defendant Elite violated the MWFA by knowingly misclassifying Plaintiffs as independent contractors, rather than as employees, and failing to deduct taxes from Plaintiffs' wages.

104.     As a result of Elite's misclassification, Plaintiffs were deprived of the applicable wage rates and pay, as well as other benefits and protections to which they were entitled by law.

105.     Due to Defendants' knowing and willful violations of the MWFA, Defendants are liable to Plaintiffs for unpaid wages, interest, and attorneys' fees and costs, pursuant to the MWFA, Md. Code, Lab. & Emp. § 3-911(c), and for any such further relief this Court deems appropriate.

**COUNT THREE**
**Violation of the MWHL – Unpaid Maryland Overtime Wages**
**(Brought on behalf of Plaintiffs and the Maryland Class against Defendants Elite, Gilbane,**
**Whiting-Turner, and HITT)**

106.     Plaintiffs repeat and reallege the foregoing paragraphs of this complaint as if fully set forth herein.

107.     Defendant Elite was and is an employer within the meaning of Md. Code, Lab. & Emp., § 3-101(c) and the MWHL, *id*. at § 3-401(b).

108.     Gilbane, Whiting-Turner, and HITT were the general contractors on the Maryland Projects and are therefore jointly and severally liable to Plaintiffs for Defendants Elite's violations of the MWHL, pursuant to Md. Code, Lab. & Emp., § 3-507.2(c).

109.     Elite unlawfully failed or refused to pay Plaintiffs' full wages for overtime hours worked, in violation of Md. Code, Lab. & Emp. §§ 3-413(b), 3-415(a) and 3-420; and Md. Code Regs. 09.12.41.10(A).

110.     Elite's violations of the MWHL were willful and not in good faith.

111.     Defendants are liable, individually and collectively, jointly and severally, to Plaintiffs and the Maryland Class under this Count for their unpaid overtime wages, and statutory damages, plus interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court pursuant to § 3-427(a) & (d) of the MWHL.

**COUNT FOUR**
**Violation of the MPWL – Unpaid Maryland Prevailing Wages**
**(Brought on behalf of Plaintiffs Jorge Calderon, Emily Perez, Julian Martinez, and the**
**Maryland Class against Defendants Gilbane and Elite)**

112.     Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

113.     Plaintiffs were and/or are employees within the meaning of the MPWL, Md. Code, State Fin. & Proc. § 17-201(f)(1), and therefore eligible to receive the prevailing wage rate for qualifying public works projects in Maryland under Md. Code, State Fin. & Proc. §§ 17-201(i), 17-202(b), and 17-208.

114.     Defendant Gilbane was the general contractor on the University of Maryland Eastern Shore School of Pharmacy and Health Professions project and is therefore jointly and severally liable to Plaintiffs Jorge Calderon, Emily Perez, and Julian Martinez for Defendants Elite's violations of the MPWL, pursuant to Md. Code, Lab. & Emp. § 3-507.2(c).

115.     Upon information and belief, Defendant Elite and/or Defendant Gilbane notified Plaintiffs on the jobsite that they would receive the prevailing wage for work on this project.

116.     The MPWL applies to public construction projects valued at $250,000 or more based on certain criteria. For government projects, a wage determination issued for a project specifies the wage and fringe benefit rates for each classification of worker, determined to be the prevailing wage in that locality for that type of construction.

117.     Under the MPWL, Defendants Elite and Gilbane were required to pay Plaintiffs all wages including fringe benefits. Md. Code, State Fin. & Proc. §§ 17-208; 17-224(b) & (e).

118.     Defendants Elite and Gilbane violated the MPWL by failing to timely pay Plaintiffs all wages due, including prevailing wages and fringe benefits, during the period beginning three years prior to the filing of this lawsuit to final judgment.

119.    Defendants Elite and Gilbane's prevailing wage violations were made willfully, knowingly, with deliberate ignorance or reckless disregard of the MPWL, and not in good faith.

120.    Defendants Elite and Gilbane are liable, individually and collectively, jointly and severally, to Plaintiffs under this Count for the difference between the prevailing wage rate and the amount the employee received, unpaid fringe benefits or fringe benefit contributions, reasonable attorneys' fees and costs, double or treble damages, and any other relief deemed appropriate by the Court. Md. Code, State Fin. & Proc. § 17-224(b) & (e).

**COUNT FIVE**
**Violation of the DCWFA – Misclassification**
**(Brought on behalf of Plaintiffs Jorge Calderon, Emily Perez, Julian Martinez, Samuel Nunez and the D.C. Class against Defendant Elite)**

121.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

122.    At all relevant times, Defendant Elite was Plaintiffs' "employer" within the meaning of the DCWFA, D.C. Code § 32-1331.01.

123.    Section 32-1331.04 of the DCWFA prohibits employers in the construction industry from improperly classifying employees as independent contractors.

124.    At all relevant times, Defendant Elite violated the DCWFA by knowingly misclassifying Plaintiffs as independent contractors, rather than as employees, and failing to deduct taxes from Plaintiffs' wages.

125.    Each time Elite paid Plaintiffs and all similarly-situated individuals performing construction work as independent contractors rather than employees constitutes a separate violation of the DCWFA.

126.    Defendants are liable to Plaintiffs and all similarly-situated employees for the wages, salary, employment benefits, and other compensation denied or lost to them by reason of

the violations; compensatory damages; double damages for lost wages or benefits; an additional $500 for each violation; reasonable attorneys' fees and litigation costs; and any other relief this Court deems appropriate. D.C. Code § 32-1331.09.

**COUNT SIX**
**Violation of the DCMWA – Unpaid D.C. Overtime Compensation**
**(Brought on behalf of Plaintiffs Jorge Calderon, Emily Perez, Julian Martinez, Samuel Nunez and the D.C. Class against All Defendants)**

127.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

128.    Defendants were and are employers within the meaning of the DCMWA, D.C. Code § 32-1002(3), and are subject to the provisions of the DCMWA.

129.    Defendants Gilbane, Whiting-Turner HITT, and Suffolk were the general contractors on the D.C. Projects and are therefore jointly and severally liable to Plaintiffs for Elite's violations of the DCMWA, pursuant to D.C. Code § 32-1012(c).

130.    Defendants had an obligation to provide overtime pay at a rate of one and one half of the basic hourly rate to Plaintiffs and other similarly situated workers for hours worked in excess of 40 hours per week.

131.    Defendants' violations of the DCMWA were willful.

132.    Defendants are liable, individually and collectively, jointly and severally, to Plaintiffs under this Count for unpaid overtime wages in such an amount to be proven at trial, plus statutorily available damages equal to treble the amount of unpaid overtime wages, interest (both pre- and post-judgment), attorneys' fees, costs, and any other and further relief this Court deems appropriate. D.C. Code § 32-1012.

## COUNT SEVEN
### Violation of the DCWPCL – Unpaid D.C. Prevailing Wages
### (Brought on behalf of Plaintiff Julian Martinez and the D.C. Class against Defendants Whiting-Turner and Elite)

133.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

134.    Defendants are employers within the meaning of the DCWPCL, D.C. Code § 32-1301(1B), and are subject to the provisions of the DCWPCL.

135.    Defendant Whiting-Turner was the general contractor on the Ritch Homes Apartments Project and is therefore jointly and severally liable to Plaintiffs for Defendant Elite's violations of the DCWPCL, pursuant to D.C. Code § 32-1303(5).

136.    Upon information and belief, Defendant Elite and/or Defendant Whiting-Turner notified Plaintiffs on the jobsite that they would receive the prevailing wage for work on this project.

137.    Under the DCWPCL, Defendants were required to pay Plaintiffs and the Class all wages for time worked. For purposes of the DCWPCL, "wages" also include "fringe benefits paid in cash," and "other remuneration promised or owed" pursuant to (i) "a contract for employment, whether written or oral," (ii) "a contract between an employer and another person or entity," or (iii) "District or federal law." D.C. Code § 32-1301(3).

138.    For purposes of the DCWPCL, wages can include prevailing wages and fringe benefits. In enforcing the DCWPCL, courts shall presume "the remuneration promised by an employer to an employee … to be at least the amount required by federal law, including federal law requiring payment of prevailing wages." D.C. Code § 32-1305(b).

139.    Defendants had an obligation to pay Plaintiffs the proper prevailing wage rates pursuant to D.C. Code § 32-1301(3)(E)(ii) & (iii).

140.    Defendants violated the DCWPCL by failing to timely pay Plaintiffs all wages due, including prevailing wages and fringe benefits during the period beginning three years prior to the filing of this lawsuit to final judgment.

141.    Defendants' actions were willful and not in good faith.

142.    Defendants are liable, individually and collectively, jointly and severally, to Plaintiffs under this Count for all unpaid wages in such an amount to be proven at trial, plus statutorily available damages equal to three times the amount of unpaid wages, interest (both pre- and post-judgment), attorneys' fees, costs, and any other and further relief this Court deems appropriate. D.C. Code §§ 32-1303(5) and 32-1308.

### **Prayer for Relief**

WHEREFORE, Plaintiffs request that this Court grant them the following relief:

a)   Certify this matter as a Class Action under Fed. R. Civ. P. 23(b) for the appropriate counts and appoint Plaintiffs as the representatives of the Classes and the undersigned attorneys as Class Counsel;

b)   Grant judgment against Defendant Elite in favor of each Plaintiff in the amount of each Plaintiff's respective unpaid wages plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

c)   Grant judgment against Defendants Elite, Gilbane, Whiting-Turner, and HITT, jointly and severally, and in favor of the Maryland Class for unpaid wages and benefits, double or triple unpaid wages and benefits in liquidated damages, and reasonable attorneys' fees and costs, pursuant to the Maryland Wage Laws.

d) Grant judgment against Defendants, jointly and severally, and in favor of the D.C. Class for unpaid wages and benefits, three times unpaid wages and benefits in liquidated damages; and reasonable attorneys' fees and costs, pursuant to the D.C. Wage Laws.

e) Award Plaintiffs all wages owed by Defendants for Plaintiffs' work on the Projects;

f) Award Plaintiffs liquidated and compensatory damages to the fullest extent permitted under the law;

g) Award Plaintiffs litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law;

h) Award Plaintiffs prejudgment interest at the legal rate from the date of violations until judgment, and post-judgment interest at the legal rate thereafter;

i) Order that Defendants cease and desist from violating the FLSA, D.C. Wage Laws and Maryland Wage Laws;

j) Permanently enjoin Defendants to pay overtime and non-overtime compensation at least at the prevailing wage required by the DCWPCL and MPWL where applicable; and

k) Award such other relief as this Court deems just and proper.

July 26, 2024

Respectfully submitted,

*/s/ Brian Corman*

Brian Corman (MD 21529)
Christine E. Webber (*pro hac* to be filed)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Phone: (202) 408-4600
Fax: (202) 408-4699
cwebber@cohenmilstein.com
bcorman@cohenmilstein.com

Mark Hanna (Bar #16031)
Arlus J. Stephens (Bar #16036)
Murphy Anderson, PLLC
1401 K Street NW, Suite 300
Washington, DC 20005
Phone: (202) 223-2620
Fax: (202) 296-9600
mhanna@murphypllc.com
astephens@murphypllc.com

*Attorneys for Plaintiffs*